UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                    )<br>)<br>)<br>ERIK PENA                                         ) | Case No.: 24-cr-71-SE |

GOVERNMENT'S SENTENCING MEMORANDUM AND
REPLY TO DEFENDANT'S SENTENCING MEMORANDUM

The defendant was a drug dealer for profit, armed with guns and replete with drugs. He distributed methamphetamine and fentanyl, while maintaining a "stash house."[1] In his stash house, he kept a safe with his drug product – fentanyl, cocaine, and methamphetamine – along with three guns and ammunition. The defendant concealed an AK-47 under a mattress and had body armor in the closet. Because of the defendant's serious, dangerous behavior, the government is requesting 135 months' imprisonment.

I.      **Probation's Guideline Calculation**

In calculating the guidelines, Probation used "ICE" methamphetamine and distinguished between fentanyl and the fentanyl analogue where appropriate, resulting in a base offense level 34. Presentence Report ("PSR") ¶ 30. Probation did not include the 449 grams of methamphetamine from the defendant's April 2023 distribution to the confidential source ("CS") as relevant conduct. PSR ¶¶ 10-12, 30. Probation properly applied the possession of a dangerous weapon and stash house enhancements. PSR ¶¶ 31-32. After adjustments for the acceptance of responsibility, Probation determined the total offense level to be 35 and the defendant's criminal

---

[1] A "stash house" refers to a secondary residence used primarily for housing drugs.

history category ("CHC") to be I, resulting in a guideline sentencing range of 168 to 210 months' imprisonment. PSR ¶ 79.

While the government agrees that Probation properly calculated the base offense level, the government is requesting a downward variance to account for the discrepancy between the "ICE" methamphetamine and methamphetamine mixture. Although the defendant undoubtedly distributed large quantities of methamphetamine, there is no evidence that he participated in a larger organization or scheme to import methamphetamine from abroad. Therefore, based on the facts of this case, the government believes a variance to the methamphetamine mixture offense level is appropriate. Using methamphetamine mixture and enhancements and adjustments as previously outlined, the total offense level would be 33, resulting in a guideline range of 135 to 168 months' imprisonment.

The government objects to Probation's exclusion of the April 2023 methamphetamine sale from the drug weight calculation. However, including the drug weight does not affect the guideline calculation if the Court accepts Probation's calculation using "ICE" and the fentanyl analogue. It also does not affect the guideline calculation if the Court accepts the requested methamphetamine mixture variance, as the total offense level would remain a 33. However, if the Court agrees with the defendant and also varies downward based on the drug weight distinction between fentanyl and the fentanyl analogue, the guideline calculation does change. In that scenario, the exclusion of the April 2023 methamphetamine sale, after adjustments, would result in a total offense level of 31, with a guideline sentencing range of 108 to 135 months' imprisonment.

## I. The April 2023 controlled purchase of methamphetamine constitutes relevant conduct and should be included in the guideline calculation.

As outlined in the PSR, on April 13, 2023, the defendant sold 449 grams of methamphetamine to the CS at the CS's residence. PSR ¶¶ 10-11. The defendant arranged the transaction by phone and approached the CS's residence carrying an appliance box. PSR ¶ 11. The methamphetamine was wrapped in green saran-wrap. Following the purchase, the CS's attempts to call the defendant were unsuccessful. PSR ¶ 12.

In September 2023, the defendant proactively contacted the CS, stating that he was "back in the game," but could only sell smaller quantities because someone "ratted on" him and he needed to "lay low." PSR ¶ 12. In October 2023, the defendant told the CS that he was getting out of debt by selling heroin/fentanyl to a large customer, and soon he could obtain large quantities of methamphetamine again. PSR ¶ 16. He stated that he reduced his customers to limit his exposure, but he would keep the CS "in the loop." *Id.* In November 2023, the defendant told the CS that he could begin selling large quantities of methamphetamine again, but reiterated that he was "tightening up" his customer base, which would include the CS. *Id.* At the FBI's direction, the CS arranged a controlled purchase of methamphetamine from the defendant for December 6, 2023. PSR ¶ 17. The defendant stated that he only had "two" left, which investigators believed meant two pounds of methamphetamine. *Id.* The defendant ultimately sold the CS 111.9 grams of methamphetamine. *Id.* The CS continued buying methamphetamine and fentanyl in January, February, March, and April 2024. PSR ¶¶ 18-21.

Probation determined that the April 2023 methamphetamine sale did not constitute relevant conduct because of the "significant length in time" between the April 2023 sale and the defendant's "next known drug distribution." PSR ¶ 30. The government disagrees. The April 2023 methamphetamine sale was part of a common scheme or plan involving similar modus

operandi, the same type of drug, the same participants, and the same criminal purpose. "Under [the relevant conduct] guideline, drug quantities not charged as part of the offense of conviction may be included in determining the defendant's offense level as long as those uncharged quantities are supportably found to be part of a common course of conduct, scheme, or plan that includes the offense of conviction." *United States v. Eisom*, 585 F.3d 552, 557 (1st Cir. 2009) (citing USSG § 1B1.3(a)(2)); *see United States v. Bryant,* 571 F.3d 147, 159 (1st Cir.2009); *United States v. Sklar,* 920 F.2d 107, 110 (1st Cir. 1990)). "[T]he term 'same course of conduct' is analytically distinct from the term 'common scheme or plan.' The former concept focuses on whether the defendant repeats the same type of criminal activity over time. The 'common scheme or plan' prong, on the other hand, looks to whether the acts [are] 'connected together' by common participants or by an overall scheme." *United States v. Vicente*, 909 F.3d 20, 24 (1st Cir. 2018) (internal citations omitted).

Under the United States Sentencing Guidelines Application Note 5(B)(i), "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. App. Note 5(B)(i). When determining whether conduct is part of a common scheme or plan, the court considers the following non-exhaustive list of factors: "nature of the offenses, their timing, their commonalities, and the existence or non-existence of overarching patterns." *See Id. (*citing*, e.g., Bryant,* 571 F.3d at 159–60; *United States v. Jaca–Nazario,* 521 F.3d 50, 55–56 (1st Cir. 2008)). If temporal proximity is lacking, conduct can still constitute common scheme upon a stronger showing of similarity. *See United States v. Brasher*, 105 F.4th 1002, 1007 (7th Cir. 2024); *United States v. Lopez*, 70th F.4th 325, 329-30 (5th Cir. 2023). However, a drug distributor is not

held accountable for every drug sale in his or her past, as "isolated acts cannot be conjoined and drug quantities aggregated for sentencing purposes without a rational basis." *See Sklar*, 920 F.2d at 111.

Here, the facts of this case warrant the inclusion of the April 2023 methamphetamine sale into the guideline calculation. The defendant operated as a methamphetamine and fentanyl distributor. After his April 2023 sale to the CS, when the defendant contacted the CS himself, he told the CS that he was still a drug dealer and had to "lay low" because someone "ratted on" him. The defendant never abandoned his criminal pursuits, and his criminal purpose remained ongoing. And the defendant remained in contact with the CS, contacting him in September, maintaining the ongoing buyer/seller relationship. While ultimately the physical transactions themselves between the defendant and the CS were separated by eight months, their relationship remained the same – drug customer/drug buyer. The separation is not attributable to the defendant's decision to abandon his drug-dealing. *See United States v. Sumner*, 325 F.3d 884, 891 (7th Cir. 2003) (when analyzing temporal proximity in the context of course of conduct, the Court considered that the lapse in drug dealing occurred because of an issue with suppliers, not because the defendant had "any crisis of conscience"). Moreover, an eight-month gap is not dispositive, but instead, requires a stronger showing of similarity. *See United States v. Soto*, 62 F.4th 430, 435 (8th Cir. 2023) (finding that a district court's finding of relevant conduct was not plain error despite a four-year separation because the other factors substantially supported the conclusion).

While defendants are not held responsible for every drug transaction in their history, the April 2023 methamphetamine sale is not an unrelated, random drug sale. The commonalities strongly support that the April 2023 transaction was part of a common scheme or plan. First, the

defendant sold the drugs to the same CS in April 2023 as in December 2023, January 2024, March 2024, and April 2024. Next, each drug transaction occurred in Manchester, New Hampshire. In fact, the defendant sold drugs to the CS at the CS's home during both the April 2023 methamphetamine sale and the April 2024 methamphetamine sale. Third, the defendant provided the drugs to the CS similarly packaged on each occasion – wrapped in green saran wrap. Last, the defendant continued selling the CS methamphetamine – the same drug sold in April 2023.

Based on the facts in this case, the eight-month gap between the distributions does not erase the existence of the common scheme or plan. The same modus operandi, participants, locations, and drug distribution goal strongly support the drug weight's inclusion as relevant conduct.

## II. The §3553(a) factors support the government's requested sentence of 135 months' imprisonment.

The facts of this case warrant the proposed 135-month sentence. First, the nature and characteristics of the offense require a significant sentence. *See* 18 U.S.C. § 3553(a)(1). The drug amounts distributed to the CS, combined with the significant quantity of drugs seized from both his residence and stash house, support that the defendant was a large drug distributor. The defendant engaged in drug trafficking for profit, not to support a drug addiction. *See* PSR ¶¶ 61-62 (noting that the defendant reported non-problematic alcohol consumption and marijuana use "every other couple of days"). The defendant protected himself and his drug stash with multiple guns, ammunition, and body armor. He was the only one with access to the stash house. One of the recovered guns was reported stolen. Another gun, the AK47 found under the defendant's mattress, is a semi-automatic assault rifle. The defendant admitted to obtaining one gun during a drug trade. The defendant's behavior was dangerous, with potentially lethal consequences had he

ever used a weapon from his arsenal. *See United States v. Castillo*, 979 F.2d 8, 10 (1st Cir. 1992) (quoting the comments for U.S.S.G. § 2D1.1(b)(1), noting that the enhancement "reflects the increased danger of violence when drug traffickers possess weapons.").

Moreover, the defendant must be punished for his conduct and deterred from engaging in this behavior in the future. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The defendant used drug dealing to profit himself. He paid for and maintained two separate addresses, one of which he utilized solely to support his drug business. And he engaged in this behavior while possessing multiple guns. A sentence of 135 months' imprisonment will adequately punish the defendant for his drug trafficking and likely deter him and others from engaging in this behavior in the future.

The defendant's requested sentence of 60 months' imprisonment does not adequately address the goals of sentencing. It fails to appreciate the seriousness of the offense, and the dangerousness posed by the defendant's significant drug trafficking, committed with a stash house and a plethora of weapons at the ready. Such a sentence ignores the significant guideline sentencing range applicable in this case.

The defendant argues that the Court should grant him leniency because he does not have a significant criminal record and is not receiving the benefit of the zero-point offender reduction due to his "Continued Without a Finding" disposition from 2019, where the court found sufficient facts to support Breaking and Entering in a Building at Nighttime with Intent to Commit Felony and Larceny from a Building. PSR ¶ 45. But while this might not be a guilty finding, the defendant received a term of probation. *Id.* Not only that, during his supervision, probation filed a petition for a violation. *Id.* While the petition was ultimately dismissed, it extended his supervision for an additional three months. *Id.* And importantly, as the defendant later notes, he is ineligible for the zero-point offender reduction because of his gun possession.

This exclusion is with good reason – the guidelines do not afford a benefit to individuals like the defendant, who engage in dangerous, potentially violent behavior while committing serious federal offenses. A variance as requested, based on the defendant's inability to benefit from the zero-point offender reduction, is unwarranted.

      The defendant was a significant drug dealer for profit. He maintained a stash house and multiple weapons. His serious crimes warrant a significant prison sentence. The government's proposed sentence is "sufficient, but not greater than necessary" to meet the goals of sentencing. 18 U.S.C. § 3553(a). Based on the facts and circumstances of this case, a sentence of 135 months' imprisonment is warranted.

      Respectfully submitted,

      JOHN J. MCCORMACK
      Acting United States Attorney

Dated: June 5, 2025      /s/ Heather A. Cherniske
      Heather A. Cherniske
      Assistant United States Attorney
      NH Bar #19837
      Heather.cherniske@usdoj.gov